**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

TRACY R.,                                          )
                                                   )
    Plaintiff(s)                           )
                                                   )
    vs.                                    )     Case No. 4:25-CV-1680 SRW
                                                   )
FRANK BISIGNANO,                                   )
Commissioner of Social Security                    )
Administration,                                    )
                                                   )
    Defendant(s).                          )

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF

No. 10. Defendant filed a Brief in Support of the Answer. ECF No. 13. Plaintiff filed a Reply.

ECF No. 14. The Court has reviewed the parties' briefs and the entire administrative record,

including the transcripts and medical evidence. Based on the following, the Court will affirm the

Commissioner's decision.

**I.**    **Factual and Procedural Background**

On October 24, 2022, Plaintiff Tracy R. protectively filed an application for disability

insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, with an alleged onset date of October

19, 2022. Tr. 14, 172-73, 205, 210. Plaintiff's applications were denied upon initial consideration

and reconsideration. Tr. 68-76, 79-85. On March 19, 2024, she requested a hearing before an

Administrative Law Judge ("ALJ"). Tr. 86-107.

Plaintiff appeared for the hearing, with the assistance of counsel, on November 27, 2024. Tr. 30-47. Plaintiff testified concerning her disability, daily activities, and functional limitations. *Id*. During the hearing, the ALJ received testimony from vocational expert Kathleen Macy-Powers. Tr. 41-46. On January 31, 2025, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 14-25. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 167-68. On September 11, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final determination.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

2

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."

3

*Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are

4

supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2028. Tr. 17. Plaintiff has not engaged in substantial gainful activity since October 19, 2022, the alleged onset date. *Id*. Plaintiff has the severe impairments of chronic obstructive pulmonary disease (COPD), rheumatoid arthritis (RA), hypertension, and depressive disorder. Tr. 18. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 18-20. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she is capable of occasional climbing of ramps or stairs; but no ladders, ropes or scaffolds. She is also capable of occasional stooping, kneeling, crouching and crawling. She can engage in occupations that have no exposure to hazards such as dangerous moving machinery or unprotected heights, and no concentrated exposure respiratory irritants. She is capable of understanding and remembering simple and detailed, but not complex, instructions.

Tr. 20.

The ALJ determined Plaintiff is capable of performing past relevant work as a cashier II (*Dictionary of Occupational Titles* ("*DOT*") No. 211.462-010) as it does not require the performance of work-related activities precluded by her RFC. Tr. 25. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 19, 2022, through the date of this decision. Tr. 25.

## IV.     Discussion

Plaintiff asserts one assignment of error. She argues the ALJ improperly "relied on her own interpretation of the record to support the RFC." ECF No. 10. To advance this position, Plaintiff points to the underlying medical record wherein the state agency medical consultants determined there was insufficient evidence to assess an RFC, her primary care physician's opinion that she was disabled, a CT scan of her cervical spine documenting more than mild or unremarkable findings, and her belief that her activities of daily living do not support an ability to perform light work. Consequently, Plaintiff contends that the ALJ's RFC was not supported by substantial evidence.

The RFC is "the most [a claimant] can still do despite" her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). "'The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence.'" *Casey v. Astrue*, 503 F.3d 687, 696-97 (8th Cir. 2007) (quoting *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004)). "While the ALJ must consider all of the relevant evidence in determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). "With the medical record adequately developed, the ALJ was not required to seek additional information . . . or order a [consultative examination]." *Id.* (citing

6

*KKC ex rel. Stoner,* 818 F.3d at 372-73; 20 C.F.R. § 404.1519a(b)). This Court "will not disturb an ALJ's RFC finding so long as it is supported by 'substantial evidence in the record as a whole.'" *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)).

In developing the RFC in this matter, the ALJ first acknowledged Plaintiff's own description of her impairments and limitations. Tr. 21. At her hearing, Plaintiff indicated that she was able to live by herself. Tr. 36. In March of 2024, she worked as a cashier at a gas station, but was terminated after she failed to scan an item at the register. *Id.* at 37. Between September 2021 and May 2022, Plaintiff worked as a cashier at Walgreens, but left the position due to "back issues and migraines." *Id.* at 37-38. She claimed she could not maintain employment because she was unable to lift more than ten pounds, could not stand for more than ten minutes at a time, and had difficulties walking more than seven feet and navigating steps without five-minute breaks. *Id.* at 38, 40. She also reported experiencing "random migraines with stress," which could last two to three days. *Id.* at 39, 41. She endorsed using over-the-counter pain medication for symptom relief, and had not seen a specialist for the migraines. *Id.* at 39. She indicated she was on medication for depression and saw a psychiatrist via video visits twice per month. *Id.*

The ALJ found that Plaintiff's statements regarding her symptoms were not fully supported by the record. As to her depressive disorder, the ALJ noted Plaintiff's March 30, 2023 Behavioral Health Adult Intake Assessment. Tr. 21 (citing Tr. 432-41). She was described to be a low risk for financial resource strain as she did not have difficulties paying her living expenses, her transportation needs were met, and her housing was stable. Tr. 21, 432-33. She indicated she had "just lost [her] grand baby in February and [was] trying to fight the state to get [her] other grand babies." Tr. 433. She expressed some concern in maintaining her eight-year sobriety if she were to visit her daughter who was actively using. *Id.* She reported symptoms of depressed mood

7

and irritability, guilt, poor appetite and concentration, fatigue, difficulty concentrating, excessive anxiety, and sleep disturbance. *Id.* She denied mania, hallucinations, delusions, psychotic disorders, and trauma. *Id.* During examination, she was observed to have an appropriate mood; normal thought content; intact thought process and memory; age-appropriate insight; average intelligence; proper orientation to date, person, place, and situation; and no concerns with activities of daily living. Tr. 21, 439. Her diagnosis was listed as grief and mixed anxiety and depressive disorder. Tr. 23, 439. The ALJ found it noteworthy that approximately a month after her alleged onset date, Plaintiff was able to travel from Arizona, where she resided, to Missouri in order to assist her daughter manage her pregnancy complications. Tr. 22, 322.

As to her COPD, the ALJ noted the record reflected regular cigarette use despite medical advice to quit. Tr. 21. *See, e.g.*, Tr. 300 ("current everyday smoker"), 322 ("down to 8 cigarettes a day"), 325 ("down to 5 cigarettes a day"), 327 ("smoking half a pack a day"), 517 ("smoking status every day"), 521 (same), 526 (same), 535 (same), 542 (same), 547 (increased smoking), 759 (one pack per day smoker). Despite her COPD diagnosis, Plaintiff had mostly normal pulmonary exams and no pulmonary function tests in the medical record. Tr. 21. *See, e.g.*, Tr. 302 ("pulmonary effort is normal" and "no respiratory distress"), 328 (same), 331 (same), 334 (same), 344 (same), 424 (same), 446 (same), 450 (same), 521 (same), 526 (same), 535 (same), 557 (same), 570 (same), 772 (same), 782 (same), 850 (same). Although she complained of increased allergies and needed refills for her inhaler, she continued to smoke a half a pack of cigarettes per day. Tr. 327. While Plaintiff alleged rheumatoid arthritis as a severe impairment, the record was devoid of a clinical diagnosis. Tr. 21.

The ALJ then went on to summarize the medical record. She noted Plaintiff's April 24, 2022 visit to the emergency room for back pain resulting from a car accident, which occurred approximately six months prior to her alleged onset date. Tr. 21 (citing Tr. 299-317). Upon

8

examination, Plaintiff exhibited full range of motion in her left hand, fingers, and ankle; no axial skeleton or extremity tenderness to palpitation; no cervical, thoracic, or lumbar tenderness to palpitation or percussion other than her L4 to L5; no respiratory distress; and normal pulmonary effort. Tr. 21, 302. Her neurological and psychiatric examinations were also normal. *Id.* Chest and brain CT exams revealed no acute traumatic abnormalities. Tr. 21, 303. A CT of her cervical spine revealed degenerative retrolisthesis of C4 on C5, chronic nonunion of the bilateral pedicles of C7, and severe central canal stenosis at the C3-C4 and C4-C5 levels. Tr. 21, 303, 311.

Plaintiff appeared for follow-up appointments with her primary care physician, Dr. Jennifer Gonzalez, regarding her back pain. Tr. 329-37. The records indicated she had a second car accident on May 13, 2022, but she did not seek emergency care. Tr. 330. Chest and cervical X-rays from May 17, 2022 showed no acute abnormalities. Tr. 333. Starting in June of 2019, Plaintiff began physical therapy and reported it was "helping a little." Tr. 21, 330, 333. She described her pain to be non-radiating and a 6 out of 10 on the pain scale. Tr. 333. Although her physical examinations were mostly unremarkable, she was diagnosed with lumbar and myofascial strain. Tr. 340. She was not described to be in any acute distress. Tr. 22, 331. The ALJ noted that although she was directed to obtain bloodwork and see an endocrinologist for elevated calcium, she failed to make the appointments. Tr. 22, 327.

The ALJ pointed to a February 28, 2023 treatment note with Dr. Gonzalez in which it was described that Plaintiff's "chief complaint" was diabetes. Tr. 22, 445. Within the same record she denied any acute distress, her musculoskeletal examination was unremarkable, and she exhibited normal pulmonary effort, no respiratory distress, and normal breath sounds. Tr. 22, 445-46. It was noted that an increase of her Zoloft prescription from 100 to 150 mg "helped" and she was "feeling better." Tr. 23, 445. Her mental status exam was unremarkable. Tr. 446.

On October 29, 2024, she presented to Dr. Gonzalez for a follow up regarding hypertension. Tr. 1489-90. Her blood pressure reading was high. Tr. 22, 1490. She indicated she was smoking one pack of cigarettes per day. *Id.* She did not complain of any chest pain, was not in acute distress, had a normal heart rate, and no pulmonary, neurological, or psychiatric issues were noted. Tr. 22, 1492. In the same month, her blood work showed "normal CBC, normal kidney function, normal thyroid TSH[.]" Tr. 22, 1521. She remained pre-diabetic. Tr. 1521. On November 4, 2024, treatment notes indicated she was preparing for thyroid surgery, but had yet to receive clearance due to an abnormal EKG. Tr. 22, 1470. She further shared that she was feeling depressed because her apartment was infested with rats and that she was "working a lot to stay out of the house." Tr. 1470. When asked whether she wanted her mental health medications adjusted, Plaintiff declined, called her depression "situational." *Id.*

Plaintiff participated in therapy sessions, and, on November 14, 2024, she was noted to have a good prognosis; adequate progress due to her participation in services; an ability to manage distress; and compliance with her medication recommendations. Tr. 1467-68. Her mental status exam revealed an appropriate appearance; generally good health; unremarkable motor activity, speech, thought content, process, perception; appropriate judgment and insight; a full range of affect; grossly intact memory; alert attention, and a neutral/euthymic mood. Tr. 23, 1158-59.

The ALJ referenced the opinions of the state agency medical consultants, Dr. Leelavathy Reddy M.D. and Dr. Joshua Rubin, Psy.D., who attempted to evaluate Plaintiff's mental health symptoms upon initial consideration for disability insurance benefits and on reconsideration after denial. Tr. 23, 49-53, 56-61. Dr. Reddy did not provide an opinion regarding Plaintiff's mental RFC because there was insufficient evidence to assess her allegations. Tr. 23, 52, 59-60. The record indicated that Plaintiff had failed to submit her activities of daily living and work history

10

forms, which were needed to complete a functional and vocation assessment. *Id.* Attempts to reach Plaintiff were unsuccessful. *Id.* Dr. Rubin indicated that the same lack of information from Plaintiff made a mental RFC evaluation unfeasible. Tr. 23, 57-58. Similarly, Dr. Cynthia Linardos, M.D. and Dr. Robert Barricks, M.D., were unable to formulate a physical RFC due to insufficient evidence from the Plaintiff. Tr. 24, 50-51, 58, 61.

Lastly, the ALJ considered two Treating Source Statements, dated April 3, 2024, in which Dr. Gonzalez provided her medical opinion as to Plaintiff's psychological and physical limitations. Tr. 24, 496-500, 505-08. Plaintiff established care with Dr. Gonzalez as her primary care physician on February 6, 2019. Tr. 496, 505. Her impairments were listed as recurrent major depression disorder, generalized anxiety disorder, hypertension, hyperparathyroidism, prediabetes, hyperlipidemia, grief, postmenopausal bleeding, asthma, COPD, and chronic back pain. *Id.*

Dr. Gonzalez opined that Plaintiff was mildly limited in her ability to understand, remember, or apply information, and mildly limited in short term memory when experiencing stress or anxiousness. Tr. 497-98. She understood Plaintiff to have no limitations in her ability to interact with others; concentrate, persist, or maintain pace; adapt or manage herself; remember locations and work-like procedures; understand and carry out very short and simple instructions; understand and carry out detailed but uninvolved written or oral instructions; work appropriately with the general public, co-workers, and supervisors; and adapt appropriately in social settings and in response to changes in work settings. Tr. 498-99. Although Dr. Gonzalez indicated Plaintiff could maintain regular attendance and be punctual within customary tolerances and would not require enhanced supervision, she wrote that Plaintiff would likely only be able to work three days per week, could maintain attention and concentration for approximately thirty

minutes before needing redirection or a break, and be off-task 10% of the workday due to her

psychological issues and 5% of the workday to her physical issues. Tr. 499-50, 505.

As to her physical limitations, Dr. Gonzalez checked the boxes that Plaintiff could rarely

lift or carry less than 10 pounds and never lift or carry more than 10 pounds. Tr. 506. Dr.

Gonzalez believed Plaintiff could sit for less than one hour in an 8-hour workday and stand/walk

for up to one hour in an 8-hour workday. *Id.* She did not indicate any need for Plaintiff to lie

down or recline, elevate her legs, or use an assistive ambulation device throughout a workday.

*Id.* Dr. Gonzalez opined that Plaintiff could occasionally push or pull with her left arm/hand;

rarely push or pull with her right arm/hand; frequently reach overhead and all other directions

handle, finger, and feel with her left arm/hand; and occasionally reach overhead all other

directions, handle, finger, and feel with her right arm/hand. Tr. 507. She had no limitations with

the use of her feet. *Id.* Dr. Gonzalez further limited Plaintiff to never climbing ladders and

scaffolds, operating a vehicle, encountering unprotected heights and pulmonary irritants; rarely

balancing, stooping, kneeling, crouching, and crawling; rarely encountering moving mechanical

parts, humidity and wetness, extreme cold, extreme heat, and vibrations; and occasionally

climbing ladders and scaffolds. Tr. 508.

In reviewing the Treating Source Statement as to Plaintiff's psychological conditions, the

ALJ wrote:

> The opinion is partially persuasive because the mild to no limitations are
> supported by references to the record including the claimant's subjective reports
> of depressive symptoms for many years. This part of the opinion is also consistent
> with the longitudinal treating notes that show treatment and medication for
> depression with corresponding symptoms but yet she has the ability to work,
> drive, travel and live alone. However, Dr. Gonzalez then completed [the] checked
> box form indicating the claimant would be absent 4+ days per month and can only
> work 3 days/week, without any supported reference to the objective medical
> evidence of clinical correlating evidence to support the extreme limitations.
> Moreover, the extreme limitations contradict the mostly mild limitations
> throughout the remainder of the opinion. Further, the extreme limitations are not

consistent with the claimant's ability to travel independently out of state and live on her own. Consequently, this part of the opinion is not persuasive.

Tr. 24.

The ALJ came to a similar conclusion when reviewing Dr. Gozalez's Treating Source Statement addressing her physical conditions:

This opinion is not persuasive because it is not offered with support to the medical record. As noted, the extreme limitations are not consistent with the claimant's ability to travel independently out of state, handle her activities of daily living and live on her own. Consequently, this opinion is not persuasive.

*Id.*

Plaintiff argues the record does not support the ALJ's determination that she can perform light work with postural and environmental limitations. She insists that while the ALJ described her medical history to primarily consist of mild or unremarkable findings, one specific CT scan from April 24, 2022, six months before her alleged onset date, documented "severe central canal stenosis of her cervical spine at C-4 and C4-5, as well as chronic nonunion of the bilateral pedicles of C7 and degenerative retrolisthesis of C4 on C5." ECF No. 10 at 4-5 (citing 303, 311-12). Plaintiff does not point to any other records that contradict the ALJ's conclusion. Rather, she generally highlights her diagnoses of COPD, rheumatoid arthritis, hypertension, and severe cervical stenosis, and criticizes the ALJ for crafting an RFC based on notations in her medical record indicating she had normal pulmonary effect, no respiratory distress, normal breath sounds, and lumbar tenderness. *Id.* at 6. While Plaintiff refers to the state agency medical consultants for having insufficient evidence to assess an RFC, the Court finds it significant that the reason noted for the lack of evidence was Plaintiff's own failure to timely submit the necessary forms to the agency. *See* Tr. 23-24, 50-52, 59-61.

After considering the evidence in the record as a whole and the ALJ's decision, the Court finds that substantial evidence supports the determination that Plaintiff had the RFC to perform

13

light work with the additional stated limitations. *See Austin*, 52 F.4th at 728, 730-31 (court will not disturb the ALJ's decision when it falls within the "available zone of choice"; finding that substantial evidence supported the ALJ's determination where the ALJ considered claimant's treatment notes, course of treatment, and daily activities); *Hurd*, 621 F.3d at 738.

As summarized above, the ALJ relied on the objective medical evidence of record, which was considered and factored into the evaluation of Plaintiff's RFC. To account for Plaintiff's credible limitations with respect to all of her severe impairments, the ALJ limited her to a reduced range of light work. These limitations were consistent with the lack of evidence of debilitating COPD symptoms as Plaintiff continued to be a daily smoker despite medical advice to quit and mostly normal pulmonary examinations. As the ALJ also noted, there was a lack of records establishing rheumatoid arthritis as an official diagnosis. While Plaintiff argues otherwise, physical examinations were unremarkable overall. The one record Plaintiff highlighted was a CT scan taken immediately after she was in a car accident and six months before her alleged onset date. *Id.* Significantly, however, the ALJ *did* explicitly cite to and consider this record when formulating Plaintiff's RFC of light work with postural and environmental limitations. Plaintiff cites to no other records showing that the ALJ was incorrect in his assessment regarding mild or unremarkable physical examination results. The ALJ also summarized her mostly normal mental status examinations, acknowledging her reports of some situational depression and anxiety, and the efficacy of her mental health medications and counseling. As to activities of daily living, the ALJ not only referred to her ability to travel, but that she lived alone without assistance. In fact, the record supported that Plaintiff herself had "no concerns" regarding her activities of daily living. *See* Tr. 418, 421, 427, 431, 439, 1117.

The Social Security regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1). Ultimately, "the interpretation of physicians' findings is

14

a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Although Plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not this Court's role to reweigh the medical evidence of Plaintiff's limitations considered by the ALJ in his determination of Plaintiff's RFC. *Hensley*, 829 F.3d at 934. Plaintiff's assertion that there was no functional medical evidence available in the record after the ALJ discounted Dr. Gonzalez's medical opinions fails, as there is no requirement that the RFC finding be supported by a specific medical opinion, and the examination findings considered by the ALJ speak directly to Plaintiff's ability to function in the workplace. *See Hurst v. Kijakazi*, 2021 WL 3021424, at *7 (E.D. Mo. July 16, 2021) ("[O]bjective medical findings and evidence can constitute sufficient medical support for an RFC assessment even in the absence of medical opinion evidence."); *Schmitt v.Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (RFC determination is based on all relevant evidence, including the medical records, observations of treating physicians and others, and claimant's subjective complaints); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing disability).

While Plaintiff relies on *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020), it is distinguishable from the instant matter. The Eighth Circuit in *Noerper* took issue with the ALJ's reliance on a generalist's opinions over those of a specialist, whose opinion on limitations the ALJ "failed to acknowledge." *Id.* at 745-46. *Noerper* held that "the absence of evidence translating the medical evidence and subjective complaints into functional limitations, coupled with the failure to address or resolve the differences between the medical opinions of Drs. Wilkerson and Jones leaves us unable to determine the permissibility of the Commissioner's RFC determination." Here, however, the ALJ did explain why Dr. Gonzalez's extreme

15

limitations in a checkbox RFC form were not supported by the medical evidence in the record and, thus, not persuasive.

Plaintiff also cites *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017) for support, but this case is also distinguishable. In *Combs*, the Eighth Circuit found that the ALJ failed to develop the record because the ALJ did not seek clarification from the claimant's treating physicians regarding the meaning of "no acute distress" and "normal movement of all extremities." *Id.* at 646-47. Rather than seeking clarification, the Eighth Circuit held that the ALJ improperly relied on his own interpretation of those terms when determining the weight to assign the opinions of two reviewing physicians, and the relevance of the terms to determining the plaintiff's ability to function in the workplace. *Id*. By contrast, the ALJ here did not determine the weight to assign Dr. Gonzalez's opinion based upon vague statements made by other physicians. Instead, the ALJ carefully explained how both the medical record and Dr. Gonzalez's own opinions contradicted the extreme limitations she applied to Plaintiff.

"Ultimately, the plaintiff bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment," *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citations omitted), and the RFC need only include the credible limitations supported by the record, *see Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). Notably, here, the ALJ did not have the benefit of reviewing state agency RFC assessments because Plaintiff herself failed to submit needed information to the examiners in time.

The Court finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole. Under these circumstances, the ALJ was not required to further develop the record, and did not improperly rely on her own interpretation of the record to support the RFC.

16

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Tracy R.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 11th day of May, 2026.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE